# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 22, 2026

Lyle W. Cayce
Clerk

————————

No. 25-30044

————————

CRESCENT CITY SURGICAL OPERATING COMPANY,

*Plaintiff—Appellee*,

*versus*

INTERSTATE FIRE & CASUALTY COMPANY; INDEPENDENT
SPECIALTY INSURANCE COMPANY; VELOCITY RISK
UNDERWRITERS, L.L.C.; CERTAIN UNDERWRITERS AT LLOYDS,
LONDON, SUBSCRIBING TO POLICY NO. VPC-CN-0002838-01,
*improperly named* CERTAIN UNDERWRITERS AT LLOYDS,
CONSORTIUM NO. 9226,

*Defendants—Appellants*.

————————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-2625

————————————————————————

Before KING, JONES, and WILSON, *Circuit Judges*.

PER CURIAM:[*]

This insurance dispute arises in the wake of Hurricane Ida, a Category 4 hurricane that swept through Louisiana in August 2021. After its coverage

————————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

claims were denied, a Louisiana hospital brought this action against its insurers, two domestic and two foreign. The district court compelled arbitration of the claims against the foreign insurers but declined to compel arbitration as to the domestic insurers. The court then refused to stay the litigation pending the foreign insurers' arbitration. All four insurers appeal.

We first determine that the foreign insurers have standing to appeal, even though they were afforded (partial) relief in the district court. On the merits, bound by Louisiana law and this court's recent precedent, we affirm the denial of arbitration as to the domestic insurers. But we conclude the district court abused its discretion by not staying the litigation pending arbitration against the foreign insurers.

## I.

Plaintiff-Appellee Crescent City Surgical Operating Company (Crescent City) operates an acute care hospital in Metairie, Louisiana. To insure the hospital, Crescent City contracted for coverage with four insurers (collectively, the Insurers): two domestic companies, Independent Specialty Insurance Company and Interstate Fire & Casualty Company, and two foreign, brokered through Certain Underwriters at Lloyds, London (the Underwriters). The Insurers agreed to provide discrete levels of coverage for Crescent City's hospital, all delineated within a single document (the Policy) administered and executed by Velocity Risk Underwriters, L.L.C.

The Policy contains two clauses at issue in this case. First, it contains an arbitration clause: "All matters in dispute between the named insured and the insurer(s) . . . in relation to this insurance, including this policy's formation and validity . . . shall be referred to an Arbitration Tribunal . . . ." Second, it contains an allocation endorsement. That endorsement lists unique contract and policy numbers for each of the Insurers' contracted

coverage, and it states that "[t]his contract shall be constructed as a separate contract between the Insured and each of the Insurers."

Following Hurricane Ida, Crescent City submitted a claim under the Policy for business interruption losses, totaling $974,925.42. The Insurers, through a third-party administrator retained by Velocity, denied the claim based on its assertion that Crescent City "refused to cooperate with the Insurer[s'] investigation." Subsequently, Crescent City sued the Insurers in Louisiana state court, maintaining that they breached the insurance contract, failed to evaluate and adjust the claim properly and timely, and failed to pay business interruption costs. The Insurers removed the case to federal court under 9 U.S.C. § 205, which provides for removal where "the subject matter of an action or proceeding . . . relates to an arbitration agreement or award falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards]." *See generally* 9 U.S.C. § 201 *et seq.* (providing for enforcement of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the Convention)).

In federal court, the Insurers moved to compel arbitration, again invoking the Convention as well as the Policy's arbitration clause. Crescent City did not oppose the motion, and the district court granted it. Four months later, the Insurers filed another motion asking the court to "enforce the arbitration agreement and appoint an arbitrator and umpire as required by the arbitration agreement." This time, Crescent City opposed the Insurers' motion, arguing that the Insurers deliberately delayed the arbitration process and that the required qualifications for umpires were impossible to meet. The district court granted the Insurers' motion and provided a detailed process and timeline for the parties to select their arbitration panel.

No. 25-30044

The parties complied, and their arbitration panel then issued a scheduling order and set an arbitration hearing. Discovery and preliminary motions practice proceeded before the panel. But "days before dispositive motions were due," Crescent City sought a stay of the arbitration proceedings and filed in the district court a "motion to reopen, lift stay, reconsider/set aside orders granting motions to compel/enforce arbitration[,] and to stay proceedings" under Federal Rule of Civil Procedure 54(b).

The district court granted Crescent City's motion in part (as to the domestic insurers) and denied it in part (as to the foreign insurers). Relying on the clause in the Policy stating that the Policy constitutes separate contracts between Crescent City and each of the Insurers, the court reasoned that the Convention did not apply to the contracts between Crescent City and its domestic insurers. Because the Convention did not apply to those contracts, the court determined that they were governed by Louisiana law. And because Louisiana law does not permit the enforcement of arbitration clauses in insurance contracts, the court deemed the arbitration clause unenforceable as to the domestic contracts. *See* La. R.S. 22:868(A). Further, the court determined that the domestic insurers could not rely on equitable estoppel to compel arbitration. The district court did not disturb its previous order compelling arbitration of the claims against the foreign insurers pursuant to the Convention. But the court declined to stay the litigation against the domestic insurers pending the foreign insurers' arbitration.

The Insurers—foreign and domestic—timely appealed the district court's decision not to compel arbitration as to all claims. In this court, Crescent City moved to dismiss the Underwriters from the appeal for lack of standing. The Underwriters responded. The motion was carried with the case and we begin our discussion by addressing it.

4

No. 25-30044

## II.

Crescent City asserts that the Underwriters, who prevailed on their motion to compel arbitration, may not now challenge the district court's favorable ruling. Crescent City also urges this court to dismiss the Underwriters' appeal because Crescent City intends to seek their dismissal with prejudice before the district court. Crescent City posits that once the Underwriters are dismissed, the arbitration "can be dissolved" because Crescent City "will not be suing, pursuing any causes of action, claims, or disputes as to [the Underwriters]."

The Underwriters contest that they were prevailing parties in the district court because that court's bifurcation of the case "obliterate[s]" their "ability to meaningfully arbitrate 'all disputes' under the Policy." They further assert that, even if they were prevailing parties, the risk of collateral estoppel and financial loss stemming from the appealed order give them appellate standing. In short, the Underwriters contend that because their motion was only partially granted—and hence partially denied—the denial of complete relief is sufficient to confer standing.

"[O]nly a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980). Thus, "a prevailing party has standing to appeal only if it can demonstrate an adverse effect resulting from the judgment in its favor." *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603 (5th Cir. 2004). The Supreme Court "has clearly stated that a party is 'aggrieved' and ordinarily can appeal a decision 'granting in part and denying in part the remedy requested.'" *Forney v. Apfel*, 524 U.S. 266, 271 (1998) (quoting *United States v. Jose*, 519 U.S. 54, 56 (1996)). And "courts have permitted prevailing parties to appeal unfavorable findings that may have an adverse future effect." *United States v. Fletcher ex rel. Fletcher*, 805 F.3d 596,

602 (5th Cir. 2015) (citing *Camreta v. Greene*, 563 U.S. 692, 704 (2011)). Ultimately, under Article III, the critical question "is whether the litigant retains the necessary personal stake in the appeal." *Camreta*, 563 U.S. at 702 (citing *Deposit Guar.*, 445 U.S. at 334).

In essence, Crescent City contends that because the Underwriters prevailed in compelling arbitration of the claims against them, they are not aggrieved by the district court's decision and therefore cannot challenge it. We disagree. In the district court, the Underwriters sought to have the entire case arbitrated, arguing that any other result would render the Policy's arbitration agreement "meaningless." But the district court gave them half a loaf—determining that only the claims against the Underwriters were arbitrable and effectively bifurcating the case and allowing the litigation to proceed as to the domestic insurers. Because the Underwriters' relief was partially denied, they are aggrieved parties. *See Forney*, 524 U.S. at 271. And because the domestic insurers' litigation may well have an adverse effect on the Underwriters' arbitration, the Underwriters retain a personal stake in the appeal. *See Camreta*, 562 U.S. at 702. The Underwriters therefore have standing to challenge the district court's decision, and we DENY Crescent City's motion to dismiss the Underwriters from the appeal.[1]

## III.

This court reviews "*de novo* the denial of a motion to compel arbitration and stay proceedings pending arbitration." *Bufkin Enterprises,*

---

[1] Our determination that the Underwriters are an aggrieved party, and so have a "statutory right" to this appeal, *see Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023) (citing 9 U.S.C. § 16(a)), is fatal to Crescent City's suggestion that the Underwriters' standing should be mooted because "[Crescent City] wants [the Underwriters] fully dismissed from the proceedings." The Underwriters' right to appeal cannot be brushed aside simply because Crescent City suggests it will dismiss them on remand.

*L.L.C. v. Indian Harbor Ins. Co.*, 96 F.4th 726, 729 (5th Cir. 2024) (per curiam) (internal citation omitted). "We review for abuse of discretion a district court's determination of whether equitable estoppel may be invoked to compel arbitration." *Id.* "To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous." *Id.*

Here, the Insurers say Crescent City's claims against the domestic insurers should have been sent to arbitration for two reasons: The arbitration agreement (A) "is enforceable under the Convention," even against the domestic insurers, and if not, (B) Crescent City is equitably estopped from avoiding arbitration.

## A.

"We will apply the Convention where (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Town of Vinton v. Indian Harbor Ins. Co.*, 161 F.4th 282, 287 (5th Cir. 2025). The first three of these conditions are undisputed and, as the district court observed, "easily met" here. The Policy contains an arbitration clause. That clause provides for arbitration to be held in the United States, a signatory nation. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). And the arbitration agreement arises out of the arrangement by which the Insurers agreed to provide coverage for Crescent City's facility and operations—a commercial legal relationship.

The parties vigorously contest the last prong of the test, whether "a party to the agreement is not an American citizen." *Town of Vinton*, 161 F.4th at 287. That question turns on the text and structure of the Policy and its arbitration agreement. Specifically, if there is a single arbitration agreement

among five parties—Crescent City on one hand and the Insurers, including the foreign Underwriters, on the other—then all of Crescent City's claims would be subject to the Convention, and arbitrable. But if there are four bilateral agreements to arbitrate between Crescent City and each insurer, the Convention would apply only to the claims against the Underwriters, as the district court concluded.

The Insurers read the Policy as a unified, seamless agreement entered by all parties. They interpret the arbitration clause in the same way, such that both the foreign and domestic insurers are parties to one agreement, making all of Crescent City's claims arbitrable under the Convention. By contrast, Crescent City points to the directive in the Policy's allocation endorsement that the Policy is to "be constructed as a separate contract between the Insured and each of the Insurers[.]" Giving force to that provision, Crescent City reasons that the separate contracts between it and the domestic insurers do not include a noncitizen party, such that the domestic insurers cannot compel arbitration of the claims against them under the Convention. As a result, Louisiana law governs the reach of the arbitration clause, and that state's law plainly forecloses arbitration of claims against a domestic insurance company. *See* La. R.S. 22:868; *Police Jury of Calcasieu Par. v. Indian Harbor Ins. Co.*, 2024-00449, p. 4–17 (La. 10/25/24), 395 So. 3d 717, 721–30.

By this point, the ground contested by the parties has been well-plowed. In a series of recent cases, our court has adopted Crescent City's reading of the Policy in analyzing materially identical insurance policies. *Town of Vinton*, 161 F.4th at 287–88; *see, e.g.*, *Police Jury of Calcasieu Par. v. Indian Harbor Ins. Co.*, 165 F.4th 907, 908–09 (5th Cir. 2026) (applying *Town of Vinton*, 161 F.4th at 285, to "a substantively identical surplus line policy with foreign and domestic insurers").

In *Town of Vinton*, a Louisiana town entered into an insurance policy with both foreign and domestic insurers. 161 F.4th at 285. When the parties disputed coverage, the town sued all its insurers, foreign and domestic alike, in Louisiana state court. *Id.* Once litigation was underway, Vinton dismissed the foreign insurers with prejudice, leaving only the domestic insurers in the case. *Id.* The domestic insurers then removed the case to federal court and moved to compel arbitration under the Convention; the district court denied the motion and the insurers appealed. *Id.* Our court affirmed, concluding that the insurance policy, by its terms, consisted of separate contracts "between the insured and each of the insurers." *Id.* at 286. This result followed from the policy's allocation endorsement which, like the one here, stated that "[t]his contract shall be constructed as a separate contract between the Insured and each of the Underwriters." *Id.* Because there was no noncitizen party to the arbitration agreement between the town and each domestic insurer, the Convention did not apply, Louisiana law did, and the district court properly denied arbitration as to those domestic claims. *See id.*

As in *Town of Vinton*, so here. Crescent City's insurance policy includes substantively the same allocation endorsement as at issue in *Town of Vinton*. Per that provision's plain text, there are four separate contracts: one between Crescent City and each of its four insurers. Following *Town of Vinton*, we agree with the district court that the Convention applies to the contracts between Crescent City and the foreign insurers, but not to the contracts between Crescent City and the domestic insurers. Accordingly, Louisiana law applies to the domestic insurers, *see* La. R.S. 22:868, and the district court properly declined to compel arbitration as to the claims against them.

## B.

As an alternative to their contractual argument, the Insurers seek to compel arbitration as to the domestic insurers via the doctrine of equitable estoppel. In Louisiana, compelling arbitration via equitable estoppel is squarely foreclosed by state law. *See* La. R.S. 22:868; *Police Jury*, 395 So. 3d at 721–30. Nevertheless, the Insurers contend that "federal common law" should apply to these types of insurance contracts, citing our recent decision in *Bufkin*, 96 F.4th at 726, for support. But that argument "badly misreads *Bufkin*," which "expressly relie[d]" on Louisiana law. *Town of Vinton*, 161 F.4th at 288 (citing *Bufkin*, 96 F.4th at 730). And as we explained in *Town of Vinton*, "because equitable estoppel cannot contravene Louisiana positive law, La. R.S. 22:868 precludes the use of estoppel to compel arbitration here." *Id.* (contrasting *Bufkin* and *Police Jury*, 395 So. 3d at 729).

Again, we are bound to follow *Town of Vinton*: Equitable estoppel cannot provide a workaround for the Insurers where Louisiana statute clearly forecloses it. The district court was correct to decline to apply equitable estoppel to compel arbitration.

## IV.

Even if the domestic insurers cannot compel arbitration of Crescent City's claims against them, the Insurers assert that the district court erred in refusing to stay the litigation of those claims while arbitration involving the Underwriters is pending. On this issue, we agree with the Insurers.

Section 3 of the Federal Arbitration Act "compels [a] court to stay the proceeding" before it pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (discussing 9 U.S.C. § 3). Generally, however, that section "only applies to parties to an agreement containing an arbitration clause." *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016). It has been extended to nonsignatories "only where: (1) the arbitrated and

litigated disputes involve the same operative facts; (2) the claims asserted in the arbitration and litigation are 'inherently inseparable'; and (3) the litigation has a 'critical impact' on the arbitration." *Id.* (quoting *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 341 (5th Cir. 2004)). "[W]hile this court generally review[s] *de novo* a denial of a motion to stay a proceeding pending arbitration, we review whether to stay nonsignatories' litigation for an abuse of discretion." *Cure & Assocs., P.C. v. LPL Fin. L.L.C.*, 118 F.4th 663, 669 (5th Cir. 2024) (internal citation omitted). "To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous." *Id.*

In its order denying the Insurers' motion for a stay, the district court recited the *Rainier* factors. But it wholly failed to apply them. Rather, the district court gave two reasons—unrelated to the *Rainier* factors—for denying a stay of the litigation pending arbitration. First, it found that "further delay" in appointing arbitrators "would unduly prejudice Crescent City" because of the "large amount of insurance proceeds in dispute and the potential further deterioration of its [p]roperty." Second, it distinguished this case from another case pending in the Eastern District of Louisiana in which the district court stayed litigation pending this court's ruling on the applicability of equitable estoppel as a ground for compelling arbitration. Neither of these reasons was an adequate basis for denying a stay pending arbitration in this case.

Indeed, under the *Rainier* factors, it is readily apparent that the district court misapplied the law, and therefore abused its discretion, when it declined to stay the litigation against the domestic insurers pending arbitration. *See Cure*, 118 F.4th at 669. Crescent City's claims, in arbitration and in court, arise from the "same operative facts" under the Policy, which, though construed as a separate contract between Crescent City and each

insurer, still is a unified insurance agreement with the aim of providing Crescent City a seamless level of coverage. That arrangement also makes the claims against each insurer "inherently inseparable." *See Rainier*, 828 F.3d at 360. Finally, it is difficult to conceive how the litigation could not have a critical impact on the arbitration, given that both proceedings involve the same coverage questions and the same facts. *See id.* Therefore, the district court should have stayed the litigation pending resolution of the arbitration against the Underwriters.

## V.

Because the Underwriters have standing to appeal the district court's ruling partially denying the Insurers' motion to compel arbitration, Crescent City's motion to dismiss for lack of jurisdiction is DENIED.[2]

The district court compelled arbitration as to the foreign insurers but denied it as to the domestic insurers. That ruling rested on a correct reading of the Policy's arbitration clause, per *Town of Vinton*. Therefore, we AFFIRM the district court's order to that effect.

However, it was an abuse of discretion to deny the Insurers' motion to stay this litigation pending arbitration of Crescent City's claims against the foreign insurers. Accordingly, we VACATE the district court's order denying a stay and REMAND with instructions for the district court to stay further proceedings pending arbitration.

---

[2] Crescent City also filed an opposed motion to dismiss this appeal as frivolous and to lift the stay of the district court. This second motion to dismiss is DENIED for the reasons discussed above the line, and the motion to lift the stay is DENIED as moot.